[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 30, 2010
JOHN LEY
CLERK

_____

No. 09-15330

_____

D.C. Docket No. 08-00353-CR-BBM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDUARDO FOREY-QUINTERO,
a.k.a. Eduardo Rodriguez-Valle,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 30, 2010)

Before DUBINA, Chief Judge, ANDERSON, Circuit Judge, and MOODY,*
District Judge.

_____

* Honorable James S. Moody, Jr., United States District Judge for the Middle District of
Florida, sitting by designation.

MOODY, District Judge:

This appeal presents the question of whether appellant Eduardo Forey-Quintero is a derivative citizen of the United States as provided in the derivative citizenship statute formerly codified at 8 U.S.C. §1432 when, at the time of his mother's naturalization, and thereafter, while under the age of eighteen years, he was not a lawful permanent resident. We conclude that the phrase "begins to reside permanently in the United States while under the age of eighteen years" contained in 8 U.S.C. §1432 (a)(5) requires the status of a lawful permanent resident. Accordingly, we affirm the district court.

I.

Defendant Eduardo Forey-Quintero ("Forey-Quintero") was charged with one count of being an alien, previously removed from the United States, who was found in the United States without having obtained permission to reenter, in violation of 8 U.S.C. §1326(a) and (b)(2). Forey-Quintero waived his right to a jury trial. All facts submitted to the district court were agreed upon by the parties. The only disagreement was whether Forey-Quintero was an alien or a United States citizen. As such, no witnesses testified at his trial and there was no disputed documentary evidence.

2

Forey-Quintero contended that he was not an alien because he obtained derivative citizenship pursuant to 8 U.S.C. §1432 based upon his mother's naturalization. Thus, the sole issue before the district court at trial was a matter of statutory interpretation. The district court concluded that, based on the statutory language, Forey-Quintero had not obtained derivative citizenship pursuant to 8 U.S.C. §1432 because the phrase "begins to reside permanently in the United States while under the age of eighteen years" contained in subsection 5 required the status of a lawful permanent resident. It was undisputed that Forey-Quintero had not obtained the status of a lawful permanent resident while under the age of eighteen. In reaching this conclusion, the district court relied upon the following undisputed facts:

> Mr. Forey-Quintero was born in Mexico on December 22, 1982. His birth certificate lists his parents as Ana Rosa Quintero Forey and Eduardo Gonzalez Forey. Mr. Forey-Quintero came into the United States on a border crossing card when he was three years old, and lived here continuously until 2005. On March 4, 1992, when Mr. Forey-Quintero was nine years old, his mother filed a Petition for Alien Relative for him, which was approved on April 23, 1992. As a result of this petition, Mr. Forey-Quintero was placed on a list of Mexican-born people who would be eligible to apply for an immigrant visa or for adjustment of status to lawful permanent resident once a visa became available. Through no fault of his own, Mr. Forey-Quintero was placed on the wrong list. He was placed on a list for alien relatives who were age 21 or older. He correctly belonged on the list for relatives who were under the age of 21.

3

Mr. Forey-Quintero's parents divorced on October 12, 1993, when he was ten years old. His mother was awarded sole legal custody of him.

On April 22, 1999, Ana Rosa Quintero Forey became a naturalized United States citizen. Due to her naturalization, Mr. Forey-Quintero was eligible to immediately apply for an immigrant visa or adjustment of status without having to wait for a visa to become available to him. A short period of time after his mother was naturalized, on July 22, 1999, Mr. Forey-Quintero submitted an application to become a lawful permanent resident of the United States. He was sixteen at the time he filed the application. His application was approved on January 11, 2002, approximately 20 days after he turned 19 years old. [1]

(R1-54).

## II.

Forey-Quintero's appeal raises issues of statutory interpretation, which we review *de novo*. *See United States v. Ambert*, 561 F.3d 1202, 1205 (11th Cir. 2009). Because this is solely a matter of statutory interpretation, we must start with the language of the statute itself. *See Ardestani v. U.S. Dept. of Justice, I.N.S.*, 904 F.2d 1505, 1508 (11th Cir. 1990). Forey-Quintero's appeal centers on whether he achieved "derivative citizenship." This type of citizenship is derived by a child after birth through the naturalization of a parent. Claims of derivative citizenship prior to

---

[1] After becoming a lawful permanent resident in 2002, Forey-Quintero was convicted of an aggravated felony, his lawful permanent resident status was revoked, and he was ordered removed from the United States. Approximately two and a half years after he was removed, Forey-Quintero was found to be voluntarily in the United States and was charged by a federal grand jury with being found in the United States after removal and without authorization in violation of 8 U.S.C. §1326(a).

4

February 27, 2001 were governed by the former Section 321(a) of the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. §1432(a)(1994).[2] Former section 321(a) of the INA provided that a "child born outside of the United States of alien parents" automatically became a citizen of the United States upon the fulfillment of the following conditions:

> (1) The naturalization of both parents; or
>
> (2) The naturalization of the surviving parent if one of the parents is deceased; or
>
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child is born out of wedlock and the paternity of the child has not been established by legitimation; and if
> (4) Such naturalization takes place while such child is unmarried and under the age of eighteen; and
>
> (5) Such child is residing in the United States pursuant to lawful admission for permanent residence at the time of the naturalization of the parent naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

*Id*.

It is undisputed that Forey-Quintero's mother was naturalized while he was under 18 years of age and, at that time, Forey-Quintero was not residing in the United States pursuant to a lawful admission for permanent residence. The disputed issue

---

[2] The parties agree that former 8 U.S.C. §1432 applies.

is whether Forey-Quintero thereafter began to "reside permanently" in the United States while under the age of 18 as required in the second clause of subsection 5. Forey-Quintero argues that the district court erred because the phrase "begins to reside permanently" contained in the second clause of subsection 5 does not require the status of an alien lawfully admitted for permanent residence. Thus, in order to resolve this issue on appeal, we must determine whether the phrase "begins to reside permanently in the United States while under the age of eighteen years" in former section 321(a)(5) of the INA allows an alien to derive citizenship while in a status other than lawful permanent resident status.

While a matter of first impression for this Circuit, this issue has been reviewed by the Board of Immigration Appeals ("BIA") in *In re Nwozuzu*, 24 I. & N. Dec. 609 (BIA Sept. 10, 2008) and the Ninth Circuit in *Romero-Ruiz v. Mukasey*, 538 F.3d 1057 (9th Cir. 2008).[3] In those cases, the aliens, Nwozuzu and Romero-Ruiz, had a parent who was naturalized before they turned eighteen, but neither Nwozuzu nor Romero-Ruiz obtained the status of an alien lawfully admitted for permanent residence, thereafter, while under the age eighteen. Both the BIA and the Ninth

---

[3] Notably, *In re Nwozuzu* is a precedential three-member decision of the BIA, which would entitle it to *Chevron* deference if this were a direct review of the decision. *See Monroy v. U.S. Atty. Gen.*, 2010 WL 3033620, at *1 (11th Cir. Aug. 4, 2010) (*citing Quinchia v. U.S. Att'y Gen.,* 552 F.3d 1255, 1258 (11th Cir. 2008)). Given the strikingly similar facts to the case at bar, although it is not binding on this Court, we find it to be persuasive authority.

Circuit, applying the rules of statutory construction, concluded that the phrase "begins to reside permanently in the United States while under the age of eighteen years" in former section 321(a)(5) of the INA requires the child to acquire the status of an alien lawfully admitted for permanent residence before turning eighteen.

We agree with that construction of the statute for two main reasons. First, as noted by the BIA in *In re Nwozuzu*, the phrase "reside permanently" includes an "implied requirement that the residence be lawful," and "an alien admitted for a temporary period cannot be considered to be residing permanently in this country, even if he or she maintains lawful status." 24 I. & N. Dec. at 613. The BIA then concluded that the phrase "begins to reside permanently in the United States while under the age of eighteen years," "when considered in light of the definitions of 'permanent' and 'residence' and the realities of the immigration laws of this country, is most reasonably interpreted to mean that the alien must acquire lawful permanent resident status while under the age of 18 years." *Id.* In other words, a dwelling place cannot be "permanent" under the immigration laws if it is unauthorized. *Id.*

Second, as noted by the BIA in *In re Nwozuzu* and the Ninth Circuit in *Romero-Ruiz*, requiring anything less than the status of lawful permanent resident would essentially render the first clause of subsection 5 "mere surplusage." "A basic premise of statutory construction is that a statute is to be interpreted so that no words

shall be discarded as being meaningless, redundant, or mere surplusage." *United States v. Canals-Jimenez,* 943 F.2d 1284, 1287 (11th Cir. 1991). And under Forey-Quintero's construction of the second clause of subsection 5, any alien could meet the requirements of the second clause of subsection 5, regardless of whether he met the requirements of the first clause, if he or she were to leave the country and come back to the country and begin an unlawful residence. We do not believe the statute should be construed in such a way as to reward only those aliens clever enough to leave the country and return at some later point to begin to reside permanently.

## III.

For the foregoing reasons, the district court is AFFIRMED.